IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**SHERRY L. WAGNER,**                                          Civil No. 6:13-cv-01851-CL

          Plaintiff,

    v.                                                                    **OPINION AND ORDER**

**CAROLYN W. COLVIN,**
Commissioner of Social Security,

          Defendant.

CLARKE, Magistrate Judge:

     Plaintiff Sherry L. Wagner ("Wagner") seeks judicial review of the Social Security

Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB")

and Supplemental Security Income Benefits ("SSI") under Titles II and XVI of the Social

Security Act. This court has jurisdiction under 42 U.S.C. § 405(g). The Commissioner's

decision is reversed and remanded for further proceedings consistent with this Opinion and

Order.

## BACKGROUND

     Born on February 26, 1957, Wagner applied for benefits on June 25, 2008. Tr. 226, 233.

She alleges disability since February 8, 2007, due to back pain. Tr. 226, 233. The Commissioner

denied her application initially and upon reconsideration. Tr. 143-60. An Administrative Law

Judge ("ALJ") held two hearings; the first occurred on March 18, 2011, and the second occurred on July 7, 2011. Tr. 122-36, 45-119. The ALJ subsequently found Wagner not disabled on August 5, 2011. Tr. 21-30. The Appeals Council then declined review on August 12, 2013. Wagner now appeals to this court.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps in determining disability under the meaning of the Act. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If she is, the claimant is not disabled. 20 C.F.R. § 404. 1520(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404. 1520(a)(4)(ii). If the claimant does not have such a severe impairment, she is not disabled. *Id.*

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. § 404. 1520(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication proceeds beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by her impairments. 20 C.F.R. § 404.1520( e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant

Page 2 – Opinion & Order

work at step four. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant can perform her past relevant work, she is not disabled. If the ALJ finds that the claimant's RFC precludes performance of her past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404. 1520(f); *Yuckert*, 482 U.S. at 142; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, she is disabled. *Id.*

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.* at 1100. If the Commissioner meets this burden the claimant is not disabled. 20 C.F.R. §§ 404.1520(g); 404.1566.

## THE ALJ'S FINDINGS

The ALJ found that Wagner had severe impairments of lumbar spondylosis and lumbar spine facet arthropathy, but found that neither impairment met a Listing. Tr. 23-24. The ALJ concluded that she retained the RFC to perform light work except that she:

> can never climb ladders, ropes, or scaffolds, can occasionally stoop and crouch, and can have no greater than occasional exposure to excess vibration, and cannot withstand any exposure to workplace hazards such as unprotected heights and involving moving machinery. [Wagner] must be given a sit/stand option to be performed while remaining on task.

Tr. 24. Considering this RFC, the Vocational Expert ("VE") indicated Wagner could perform her past relevant work as a sales cashier. Tr. 29. The VE also indicated Wagner

was capable of performing the following occupations: counter clerk, electronics worker, and routing clerk. Tr. 30. Accordingly, the ALJ found Wagner not disabled. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Commissioner for Social Security Administration*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r of the Soc. Sec. Admin*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. *Id.* (citing *Robbins v. Social Security Administration*, 466 F.3d 880, 882 (9th Cir. 2006)), *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Id.*, *see also Batson*, 359 F.3d at 1193. However, this court cannot now rely upon reasoning the ALJ did not assert in affirming the ALJ's findings. *Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

### I. Credibility

Page 4 – Opinion & Order

Wagner argues the ALJ improperly rejected her pain and other subjective symptom testimony without making "specific findings stating clear and convincing reasons for doing so." Pl.'s Opening Br. 23.

## A. Credibility Standard

When a claimant has medically documented impairments that could reasonably be expected to produce some degree of the symptoms complained of, and the record contains no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of . . . symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996) (citation omitted). A general assertion that claimant is not credible is insufficient; the ALJ must "state which . . . testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). The reasons proffered must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citation omitted). If, however, the "ALJ's credibility finding is supported by substantial evidence in the record, [this court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citation omitted).

## B. Credibility Analysis

The ALJ found that Wagner's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms were not credible." Tr. 28. Further, the ALJ noted "claimant's various exaggerations and inconsistent findings are evidence of malingering given the symptom exaggeration noted in the record and lack of findings."

Tr. 27. The Commissioner argues that based on evidence of malingering, a lower evidentiary standard applies. Def.'s Br. 12 fn.2. Wagner counters that the Commissioner failed to show "actual" evidence of malingering, and therefore the "clear and convincing" standard should apply to her credibility test. Pl.'s Reply Br. 12, 18.

The ALJ's asserted there was "evidence of malingering," while also noting "there [was] no diagnosis of malingering *per se* . . . [although] there are frequent notes that one may infer malingering, at worse, and symptom exaggeration at least . . . ." Tr. 27. The ALJ subsequently asserted his credibility findings, "even assuming no malingering" were clear and convincing. *Id.* Later, the ALJ listed "ample evidence of secondary gain [and] no motivation to return to work" as reasons to discount Wagner's testimony, presumably in the stead of affirmative malingering. Tr. 28. To the extent there is a difference, it appears the ALJ did not base his credibility determination on evidence of malingering, but rather, at least in part, he based it on "secondary gain" motives. *Id.* In any case, neither the ALJ's decision nor the Commissioner's brief included references to any specific, affirmative evidence of malingering. The court finds, therefore, that the clear and convincing standard applies.

The Commissioner also argues the clear and convincing standard does not apply to Wagner's credibility assessment because "the agency rules do not require 'clear and convincing' reasons . . . [but rather] specify that courts must apply the extremely deferential 'substantial evidence' standard of review." Def.'s Br. 8. The Commissioner cites *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003) in support of its creative argument. Def.'s Br. 8.

In *Monjaraz-Munoz*, the Ninth Circuit reviewed a Board of Immigration Appeals ("BIA") case, and stated "we review the BIA findings of fact, including credibility findings, for substantial evidence and must uphold the BIA finding unless the evidence compels a contrary result." *Id.* at 895 (citation omitted). However, the Commissioner fails to point to any authority that suggests the substantial evidence afforded an immigration judge somehow negates decades of Ninth Circuit Social Security Administration case law. The standards are simply different. BIA requires immigration judges to make credibility findings based merely on substantial justice, with the caveat that the judge must offer a specific, cogent reason for rejecting a witness's testimony. *Turcios v. I.N.S.*, 821 F.2d 1396, 1399 (9th Cir. 1987) (citations omitted). The long-established standard for a Social Security ALJ to discount a claimant's testimony is the more rigorous clear and convincing standard, absent affirmative evidence of malingering. *See, e.g. Smolen*, 80 F.3d at 1284. Further, even when "the findings [are] supported by substantial evidence, the decision should be set aside if proper legal standards were not applied in weighing the evidence . . . ." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978); *see also Bottom v. Commissioner Social Sec. Admin.*, 2014 WL 3805576, *3 (D.Or. July 30, 2014) As elaborated in a Social Security Rule:

> The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision. It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in

> the regulations for evaluating symptoms. The determination or decision
> must contain specific reasons for the finding on credibility, supported by
> the evidence in the case record, and must be sufficiently specific to make
> clear to the individual and to any subsequent reviewers the weight the
> adjudicator gave to the individual's statements and the reasons for that
> weight. This documentation is necessary in order to give the individual a
> full and fair review of his or her claim, and in order to ensure a well-
> reasoned determination or decision.

SSR 96-7P *4, *available at* 1996 WL 374186. While it is true that an ALJ may consider

"ordinary techniques of credibility evaluation," the ALJ must nonetheless state clear and

convincing reasons for finding a claimant not credible. *Robbins*, 466 F.3d at 883.

Accordingly, the court will evaluate whether the ALJ's reasons for discrediting Wagner's

testimony were clear and convincing.

The ALJ first found that Wagner's "subjective reports of virtual immobility" were

unsupported in the record and belied by her testimony regarding activities of daily living

("ADL's"). Tr. 25; 28. In her Disability Appeal, Wagner alleged she was severely

limited in her ability to shower by herself, could not stand for more than a few minutes at

a time, and had difficulty dressing herself. Tr. 302-03. Wagner's disability application

noted she could cook, clean and do laundry in only small increments, and grocery

shopped using an electric cart. Tr. 264-65. At the hearing, Wagner stated that her

primary activities include crocheting, reading, and assisting with paperwork. Tr. 85.

The court does not find these minimal household activities inconsistent with her reports

of severe limitations in activities of daily living.

Wagner also indicated that it was typical for her to walk her dog. *Id.* The ALJ

noted that the ability to walk a dog around a high desert campground was "hardly

consistent" with her reports. Tr. 27-28. While the ability to walk a dog is arguably

inconsistent with Wagner's reports of difficulty walking more than ten yards without

resting (Tr. 267), the ALJ did not establish whether Wagner walks her dog without the

assistance of her wheelchair or walker, or the duration or length of her walks. The fact

that Wagner may be able to take her dog on brief walks with or without an assistive

device does not necessarily mean that she is not disabled. *Vertigan v. Halter*, 260 F.3d

1044 (9th Cir. 2007) (". . . the mere fact that a plaintiff has carried on certain daily

activities, such as grocery shopping, driving a car, or limited walking for exercise, does

not in any way detract from her credibility as to her overall disability."). The Ninth

Circuit has repeatedly held that one need not be "utterly incapacitated" in order to be

disabled. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

      Further, the ALJ found "no evidence of a need for a walker or prescription for

such" in the record. Tr. 28. In support, the Commissioner argues the finding was

appropriate, noting "scant" evidence of a necessity for a walker. Def.'s Br. 10. Wagner

testified at the hearing that Dr. Belza prescribed the walker, which she eventually

acquired at the Veterans of Foreign Wars organization. Tr. 89. Whether or not the

walker was prescribed, Wagner's treating and consulting physicians were certainly aware

of her use of assistive devices: on November 12, 2007, Dr. Belza noted Wagner was

"most comfortable riding in a wheelchair rather than walking." Tr. 1013. Dr. Swift noted

that on June 16, 2008, Wagner was "fairly debilitated and use[d] a wheelchair for

mobility." Tr. 1002. On October 22, 2008, Dr. Swift reported Wagner was "using her

wheelchair much less and is going to ambulate as much as she can with a cane or

Page 9 – Opinion & Order

walker." Tr. 1098. Although there is no clear evidence that a walker or wheelchair was prescribed as Wagner attested, the absence of such a prescription does not mean she is not impaired or disabled. Wagner's doctors noted in 2008 and 2009 that she had poor posture and often had trouble standing fully erect. *See* Tr. 993, 1000-1001, 1089. Based the record, the court does not find Wagner's use of a walker and/or wheelchair without a prescription as an affirmative example of Wagner's attempt to exaggerate her impairments. Therefore, the ALJ's first and second rationales are not "clear and convincing" without further development.

The ALJ's third reason for discrediting Wagner's testimony was that "[t]he claimant said her medical records are in storage but she has not made an effort to get them, and she said that she has recently been seen at a clinic that 'does not keep records.'" Tr. 28. The ALJ was presumably referring to an exchange during the hearing when he asked why Wagner had not procured medical records from Volunteers in Medicine. Tr. 103-104. Wagner replied that she had all of her medical records at a storage unit. Tr. 104. The ALJ then asked why she had not retrieved the records from the unit, to which Wagner replied she didn't have space in her RV. Tr. 105. She then stated "she really didn't know if there was something missing." Tr. 106. When questioned about the location of records from Volunteers in Medicine, Wagner answered, "I just don't think they have records or keep records. That's the impression I got." Tr. 105. Towards the end of the hearing, the ALJ and Wagner's counsel discussed that counsel had previously requested records and only received documents up until 2009. Tr. 117-118.

It appears that Wagner and/or her attorney had attempted to procure additional records, but were unsuccessful, at least up until the time of the hearing. *Id.* Whether Wagner had the records in storage at her home might impact her ability to prove disability, but the mere fact that she had not submitted the records (if in fact she had them), without further extrapolation by the ALJ, is an insufficient reason to impugn her credibility. Further, it appears the chart notes in question were eventually located, and added to the medical record after hearing as Exhibit 32F. Tr. 25, 1205-24. Assuming Exhibit 32F comprises the "missing records," it is unclear why the ALJ found her failure to have them at hearing impugned her credibility, particularly considering the records were submitted in time for the ALJ to draft his opinion. If the ALJ suspected ulterior motives, or that Wagner was not being forthright, he should have indicated as much and presented clear and convincing reasons for his opinion. The ALJ's conclusory statements do not meet the legal standard set forth by the Ninth Circuit. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ([T]he ALJ is responsible for determining credibility, resolving conflicts in the medical testimony, and for resolving ambiguities . . . [t]he ALJ's findings, however, must be supported by specific, cogent reasons." (internal citations omitted)).

The ALJ next discounts Wagner's credibility because "she denied past issues with her back related to shotgun in workers comp litigation 28F/8 [Tr. 1115]; compare with 32F [Tr. 1205-1224], lower back pain *was* related to shotgun wound." Tr. 28 (emphasis in the original). Exhibit 28F is a deposition by the workers' compensation attorney representing the claims administrator, Sedgwick, who in turn was employed by the insurer/employer. During the August 14, 2008 deposition, Dr. Thomas Rosenbaum,

an"independent" medical examiner, indicated he examined Wagner on behalf of Sedgwick, and reported that Wagner told him she had never experienced low back pain from her gunshot wound. Tr. 1115. Dr. Rosenbaum's testimony is supported elsewhere, as shortly after his October 31, 2007 examination of Wagner, the doctor produced a report in which he mentioned Wagner "did not note low back pain" associated with her 1994 gunshot wound. Tr. 371.

However, upon careful review of Exhibit 32F, it is unclear whether Wagner *was* associating low back pain with her gunshot wound. For example, while the ALJ contrasted Wagner's report that her back pain was secondary to standing all day at work with another report that Wagner injured her back on February 8, 2007 while stacking cases of soda (tr. 25), the ALJ failed to realize Wagner's standing pain complaint was made on February 1, 2007, a week before the alleged February 8, 2007 low back injury. *Compare* Tr. 1205 *with* Tr. 367. The ALJ then states that "later in the same month . . . she denied any injury in the past year." Tr. 25. However, review of the chart note reveals Wagner denied "being hit or hurt in the last year . . . [s]he feels safe in her home," offered in response to a question about domestic violence. Tr. 1207. The ALJ further references an April 16, 2007 chart note "referring to chronic back pain but the issue was a 10 year old [sic] incident regarding gunshot." Tr. 25. Rather than an unequivocal association between the gunshot wound and her pain, the note indicates Wagner had a gunshot wound ten years before, but reported "her back pain is different." Tr. 1213. Based on the foregoing, the ALJ's analysis of the "inconsistencies" between Exhibits 28F/8 and 32F do not withstand scrutiny, and are not valid reasons to discount her credibility.

Page 12 – Opinion & Order

The Commissioner also argues that because Wagner presented with only chronic low back pain on February 19, 2008 and did not mention any work incident less than two weeks after her alleged back injury, the ALJ properly discredited her testimony. Def.'s Br. 9; Tr. 1207. While the court acknowledges confusion by Wagner's failure to report her work injury during her February 19, 2008 visit, the import of her non-reporting is unclear. First, it is not as if Wagner reported being pain-free at the time; she presented with "pelvic pain and back pain" and was experiencing "chronic pain." Tr. 1207. Further, there does not appear to be any doubt about whether Wagner was in fact injured on February 8, 2007 while stacking soda at work. *See, e.g.* Tr. 391, 1114, 1222. That Wagner did not immediately and explicitly associate her back pain with a work injury is not unusual given the stigma often associated with reporting work injuries. Regardless, the record does not represent clear and convincing evidence of inconsistency. At most, any discrepancy in reporting gives rise to the possibility Wagner had preexisting back pain prior to the work injury, which is relevant to Oregon Workers' Compensation law, but not to the DIB/SSI inquiry at hand. The ALJ's conclusions are not, therefore, legally sufficient.

Finally, the ALJ provided diminished weight to Wagner's testimony because there was "ample evidence of secondary gain, no motivation to return to work, and the objective evidence supports a limited light exertional capacity." Tr. 28. Discussion of secondary gain is not prevalent in the record. In November 2008, Wagner was admitted to a hospital for "intractable pain" and "unexplained" episodes of falling. Tr. 85. The Commissioner argues that Dr. Mary Manfredi, on November 25, 2008, indicated she had

discussed Wagner with Dr. Jon Swift, who remarked he was "worried about some

secondary gains as far as her workmen's compensation." Tr. 826. However, Dr. Swift

did not mention secondary gain motives in his chart note from November 2008. Tr. 820-

23.

Additionally, despite the Commissioner's inference that Wagner might be

motivated to procure opioids based on her history, Dr. Swift noted it was not "[Wagner's]

wish" to restart any long-acting opioids. Tr. 822. Further, Dr. Swift did not mention any

secondary gain motivation when he saw Wagner again the following month, nor did he

mention that issue when he treated Wagner on October 22, 2008 and June 16, 2008. Tr.

1000, 1091, 1098.

The ALJ also provided deference Dr. Rosenbaum's functional overlay diagnosis

in assessing Wagner's credibility. Tr. 1122. However, as explained above, Dr.

Rosenbaum's opinion was framed by Wagner's workers' compensation case, so it is

unclear whether his assessment of functional overlay was limited to the unexplained

persistence of Wagner's "work-related" lumbar strain symptoms, or rather to her overall

back condition. Tr. 1116. Thus, though the ALJ explained that "Dr. Haynes agrees with

Dr. Rosenbaum's conclusion," Dr. Rosenbaum's conclusion appears to have been that

Wagner's complaints at the time of the deposition were caused by factors other than her

February 2007 work injury, which does not have a significant bearing on the present

inquiry. Tr. 26, 138-1140. The ALJ further noted that Wagner's straight-leg raising was

inconsistent based on Dr. Rosenbaum's assessment, which Dr. Haynes opined damaged

her credibility. Tr. 26, 61. However, although Dr. Rosenbaum opined that Wagner's

Page 14 – Opinion & Order

straight-leg testing was inconsistent based on a one-time evaluation, her treating

physicians noted positive straight-leg testing on several other occasions over the course of

her treatment, and did not indicate any suspicion of malingering, secondary gain

motivation, or symptom exaggeration. *Compare* Tr. 369 *with* Tr. 452, 1059, 1068, 1096.

Thus, the court finds less than "ample" evidence of secondary gain.

The ALJ also discounted Wagner's credibility because Dr. Belza's treatment was

conservative. Tr. 28. In support of his conclusion, the ALJ cited a single chart note. Tr.

1174. Review of the November 10, 2010 note reveals that Dr. Belza did not detect "signs

or symptoms of severe nerve impingement," and recommended oral steroids and muscle

relaxants. *Id.* He did not feel Wagner was a surgical candidate at the time. *Id.* Although

a conservative course of treatment can undermine allegations of debilitating pain, it is not

a proper basis for rejecting a plaintiff's credibility where the plaintiff has a good reason

for not seeking more aggressive treatment. *Carmickle v. Commissioner, Social Sec.*

*Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting *Orn v. Astrue*, 495 F.3d 625, 638

(9th Cir.2007). Wagner provided more than one reason not to take medications. First,

she was aware of her previous opioid dependency and was attempting to wean herself

from them. Tr. 1222. Second, she was having difficulty procuring medication because

was not insured and unable to get a primary care physician with a pending workers'

compensation case. Tr. 301, 1222. As such, this rationale for impugning Wagner's

credibility is not clear and convincing.

Finally, the ALJ found Wagner's credibility questionable based on inconsistencies

about her medication use, particularly in Exhibit 32F. Tr. 27. Wagner testified that she

Page 15 – Opinion & Order

took medication for back pain "on occasion," but immediately thereafter stated she took it

"pretty much daily." Tr. 81. The ALJ found Wagner's assertion that her pain was 8/10

when taking Tramadol was not credible given the periods when she was not taking

medication at all. Tr. 27, 82. For example, on February 9, 2009, Wagner was treated by

Dr. James Ritzenthaler for low back and leg pain. Tr. 1219. The doctor reported Wagner

was not taking medications. *Id.* Dr. Ritzenthaler's report is consistent with Wagner's

written disability appeal report, also submitted on February 9, 2009, indicating she had

not been using medication since January 27, 2009, less than two weeks prior. Tr. 298.

Thus, the period when Wagner was off medications appears to have been a relatively

short duration. Further, the majority of chart notes from Exhibit 32F reference the use of

pain medication, including February 19, 2007, February 23, 2007, April 9, 2007, April

16, 2007, June 7, 2007, and March 12, 2009. Tr. 1208, 1210, 1212, 1214, 1216, 1222.

Although the ALJ asked questions at the hearing regarding the intensity of Wagner's

pain, the questions predominantly referred to the time of the hearing, July 7, 2011. Tr.

81-82. Although the ALJ asked Wagner if she had ever not been taking medication in

2007, he did not ask about any other time period aside from her the present. *Id.*

Wagner was treated by Dr. Robert Hakala, on November 17, 2010 for back pain,

and it was noted she was not taking medications. Tr. 1223. Dr. Hakala reported Wagner

was in no apparent distress and had good back range of motion ("ROM"). *Id.* Wagner's

lack of severe symptoms, despite allegedly being medication free, seems to belie her

hearing testimony regarding pain. However, Wagner was in fact seeking treatment for

pain at the time. *Id.* Further, as SSR 96-7p explains: "Symptoms may vary in intensity,

Page 16 – Opinion & Order

presence, and functional effects, or may worsen or improve with time, and this may explain why the individual does not always allege the same intensity, persistence, or functional effects of his or her symptoms." *Id*. at *5. Twelve days after her visit to Dr. Hakala, Wagner treated with Dr. Belza, who noted increased low back pain, and recommended oral steroids and muscle relaxants to address a likely combination of facet arthrosis and degenerrative disc disease. Tr. 1174. Thus, given the record as a whole, Wagner's failure to consistently take pain medication is not sufficient evidence to discount her testimony.

### C. Credibility Conclusion

Based on the foregoing discussion, the ALJ failed to present sufficiently specific evidence to discount Wagner's credibility concerning the extent of her pain. On remand, the ALJ must re-weigh the evidence, and provide specific, clear and convincing reasons for discounting Wagner's credibility. The ALJ should further develop the record with specificity regarding whether Wagner's ADL's are consistent with her alleged impairment level, the import of any missing medical records, whether there is specific evidence of secondary gain motivation, and whether the record as a whole actually indicates inconsistency, given the court's discussion above.

### II. Medical Evidence

Wagner alleges the ALJ improperly rejected the opinions and conclusions of her treating and examining physicians, including Drs. Belza, Swift, Holm Neumann, and Family Nurse Practitioner ("FNP") Joannie Miller. In his decision, the ALJ gave "significant weight" to the assessment of Dr. Rosenbaum and the non-examining state

physicians. Tr. 28. The ALJ also endorsed the testimony of medical expert Dr. James

Haynes. Tr. 25-26. "Little weight" was given to the assessment of treating physician Dr.

Belza. Tr. 28.

## A. Standard

The opinions of treating doctors should be given greater deference than the

opinions of non-treating doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); *see*

*also* 20 C.F.R. § 404.1527. Where a treating doctor's opinion is not contradicted by

another doctor, it may be rejected only for "clear and convincing" reasons supported by

substantial evidence in the record. *Lester*, 81 F.3d at 830. Uncontradicted opinions of

treating physicians may be rejected for "specific and legitimate" reasons. *Id.* In order to

do so, the ALJ must set out a detailed and thorough summary of the facts and conflicting

evidence, state his interpretation, and make findings. *Magallanes v. Bowen*, 881 F.2d

747, 751 (9th Cir. 1989). The ALJ must do more than offer conclusory opinions.

*Reddick*, 157 F.3d at 725. Even when contradicted by an opinion of an examining

physician that constitutes substantial evidence, the treating doctor's opinion is still

entitled to deference. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal

quotations omitted).

## B. Analysis

Dr. Belza intermittently treated Wagner from September 2007 until November

2010. Tr. 386, 1174. The medical evidence reflects that Dr. Belza has the longest clinical

relationship with Wagner of the physicians of record, which is a factor which can lend

additional credence to a treating physician's opinion. *See* 20 C.F.R. § 404.1527(d)(2);

*see also Orn*, 495 F.3d at 633-34. The ALJ afforded his opinion "little weight" because "it was unsupported by medically acceptable clinical and laboratory diagnostic techniques and was inconsistent with other substantial evidence in the record," citing Exhibit 10F. Tr. 28, 386-89. Exhibit 10F is a report authored by Wagner's workers' compensation attorney, including check-boxes to indicate whether Dr. Belza agreed with the attorney's summary of a phone conversation regarding Wagner's workers' compensation claim. Tr. 386-89. Among other things, Dr. Belza indicated Wagner's February 8, 2007 work injury caused disc bulges at L4-5 and L5-S1 which combined with her preexisting spondylosis condition, as well as radiculopathy. Tr. 388-89. Previously, Dr. Belza had indicated he did not believe Wagner's industrial injury caused a lumbar strain, but rather that she had ongoing radiculopathy secondary to the injury. Tr. 375. The last record of Dr. Belza's treatment opines Wagner had "sensory radiculitis," and her back pain was a combination of "facet arthrosis and degenerative disc disease." Tr. 1174.

Thus, while Dr. Belza diagnosed Wagner's work injury as radiculitis/radiculopathy rather than a lumbar strain, his additional diagnoses of spondylosis and facet arthropathy were consistent with the "contrary" opinions of Dr. Rosenbaum, Dr. Chae Ha, Dr. Haynes; and were adopted by the ALJ. Tr. 392-93, 653-54, 58-59, 23. Presumably, then, the ALJ only gave "little weight" to Dr. Belza's opinion regarding his diagnosis of radiculopathy/radiculitis. However, considering the ALJ adopted two of three of Dr. Belza's diagnoses, it remains unclear why his opinion was unsupported by "medically acceptable" techniques and inconsistent with substantial evidence in the record. T. 28. Moreover, Dr. Belza's history of treatment with Wagner

Page 19 – Opinion & Order

included numerous clinical examinations and findings, as well as a variety of diagnostic

imaging studies. As such, the ALJ did not specifically address which medically

acceptable clinical and laboratory diagnostic techniques did not support Dr. Belza's

opinions, nor did the ALJ specify which substantial evidence his assessments were

inconsistent with.

Further, Dr. Belza was not the only examining physician to diagnose

radiculopathy/radiculitis; treating physician Jon Swift, D.O., also diagnosed sensory

lumbar radiculitis. Tr. 1090-91. Dr. Swift treated Wagner a few times between April

2008 and December 2008 for pain management. Tr. 450-53, 995-1002, 1090-91. An

ALJ must "mention a treating physian's medical opinion that is relevant to the medical

evidence being discussed." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1045 (9th Cir. 2007)

(internal citations and quotations omitted). Here, the ALJ did not appear to consider Dr.

Swift's diagnoses, despite the fact the doctor consistently diagnosed "sensory lumbar

radiculitis" as well as chronic lumbar and leg pain, and spondylosis. Tr. 450-53, 995-

1002, 1090-91. Further, the ALJ did not explain what weight, if any, he gave to Dr.

Swift's assessments. Tr. 27.

While the ALJ accurately reported Dr. Swift's statement that he "made [Wagner]

medically stationary," that conclusion is a term of art in Oregon Workers' Compensation

meaning "no further material improvement would reasonably be expected from medical

treatment, or the passage of time." Or. Rev. Stat. 656.005(17) (2013). It does not mean

that a plaintiff has recovered or is able to return to work. Furthermore, a plaintiff who is

deemed "medically stationary" in the context of Oregon workers' compensation law is

typically only medically stationary relative to the compensable injury under the claim, and may therefore still be disabled due to medical conditions and/or impairments not directly arising from a work injury. *See, e.g. Liberty Northwest Ins. Corp. v. Olvera-Chavez*, 339 P.3d 928, 929-30 (2014) (claim may be closed when the worker's *compensable* condition is medically stationary); *see also* Or. Rev. Stat. 656.268(1); Oregon Administrative Rule (OAR) 436-030-0020(1)(a). Thus, regardless of whether Wagner was medically stationary relative to her work injury, or even medically stationary overall, that status does not demonstrate her overall level of impairment.

Wagner was treated by Dr. Ha on two occasions in 2007, and the doctor provided a check-box assessment in June 2008. Tr. 341-48, 652-54. As the ALJ and Commissioner noted, Dr. Ha did not diagnose radiculopathy. Tr. 341, 353-54. However, he did indicate that Wagner's "residual restrictions" were "related to the preexisting degenerative changes." Again, Dr. Ha's analysis was premised on Wagner's status relative to her work injury, rather than her overall clinical picture. Tr. 343. ("[spondylosis] is something which is going to be very difficult to link to the injury back in 02/2007 . . ."). Rather, Dr. Ha's primary conclusion was that Wagner's preexisting degenerative conditions had supplanted the February 8, 2007 work injury as the primary cause of her need for medical treatment and disability. Tr. 353-54. While the ALJ indicated Dr. Haynes agreed with Dr. Ha's conclusion "that the claimant had a lumbar strain and there are no objective signs of radiculopathy," there is no mention of Wagner's severe impairments of lumbar spondylosis and facet arthropathy, which Dr. Ha also found. Tr. 26, 354. Further, it is not clear what weight the ALJ provided Dr. Ha's

Page 21 – Opinion & Order

assessment. Tr. 26.

The Commissioner argues the ALJ properly gave significant weight to the opinion of medical expert Drs. Haynes as opposed to the minimal weight given to Dr. Belza. Def.'s Br. 13. Dr. Haynes testified at both hearings based on his review of the medical record. An ALJ is "entitled to adopt the opinion of the nonexamining medical advisor, who was present at the hearing and testified, and to discount the opinion of the examining physician, because the ALJ gave specific and legitimate reasons for doing so based on substantial evidence . . .." *Andrews v. Shalala*, 53 F.3d 1035, 1037 (9th Cir. 1995). As discussed above, however, the ALJ did not provide specific and legitimate reasons for discounting the opinions of the examining physicians.

The ALJ afforded Dr. Rosenbaum's opinion significant weight, although it did not substantially differ from Dr. Belza's opinion aside from the radiculitis diagnosis. *Compare* Tr. 386-89 *with* 390-93. Insofar as the doctors disagreed on the *cause* of Wagner's symptoms/conditions, that inquiry is only significant under Oregon Workers' Compensation law. By the time Dr. Rosenbaum examined Wagner, he felt the work injury of February 8, 2007 had ceased to be the major contributing cause of her need for treatment and/or disability, as the major cause had reverted back to her preexisting conditions, including spondylosis and facet arthropathy. Tr. 392-93. He did not indicate she was no longer disabled or requiring treatment relative to her preexisting spondylosis and facet arthropathy. *Id.* Further, the ALJ incorrectly stated that Dr. Rosenbaum's ultimate diagnosis was "lumbar strain by history with lack of objective findings." Tr. 26. Dr. Rosenbaum made that diagnosis at the time of his medical examination, which was

Page 22 – Opinion & Order

accomplished without the benefit of imagining studies. Tr. 371-72. After reviewing imaging, Dr. Rosenbaum acknowledged the "existence of degenerative disc disease and changes consistent with spondylosis." Tr. 392. Again, Dr. Rosenbaum's conclusions, which the ALJ purported to weigh significantly, did not, for the most part, contemplate her overall impairment level, as his inquiry was focused more narrowly on whether her work injury had resolved. Tr. 390-93. It is therefore unclear whether Dr. Haynes' agreement with Dr. Rosenbaum's assessment of the work injury represents substantial evidence relative to her ability to maintain gainful activity. Thus, to the extent the ALJ discredited Dr. Belza's opinion because it was contradicted by the opinions of Drs. Rosenbaum and Haynes, the evidence must be reassessed using the proper legal standards. Additionally, to the extent the non-examining state medical reviewers relied on the conclusions of Dr. Rosenbaum, their opinions must also be reassessed.

The Commissioner also argues the ALJ's interpretation of the medical evidence must stand because the ALJ "is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164; Def.'s Br. 15. While the Commissioner accurately recites the guideline, the ALJ nonetheless failed to provide the legally sufficient rationales for not providing deference to the treating doctors, which is a prerequisite for resolving conflicts in the medical record.

The Commissioner further argues that the ALJ's assessment of the medical evidence was supported by the ALJ's credibility findings, which "factored significantly in the ALJ's evaluation of the medical evidence." Def.'s Br. 15. However, as the court finds error in the ALJ's analysis of Wagner's credibility, the argument is unavailing.

Page 23 – Opinion & Order

Finally, as the Commissioner concedes, the ALJ did not address the opinion of

FNP Miller.[1] As a nurse practitioner, Ms. Miller is an "other source" under the Act. 20

C.F.R. §§ 404.1513(d)(1), 416.913(d)(1). In order to reject evidence from "other

sources," an ALJ must provide germane reasons. *Turner v. Comm'r of Soc. Sec.*, 613

F.3d 1217, 1224 (9th Cir. 2010). Here, despite the fact that Ms. Miller treated Wagner

regularly in 2007 and 2008 (Tr. 682-769), the ALJ does not appear to have considered her

opinion (Tr. 649-51). On remand, Ms. Miller's opinion should be addressed insofar as it

provides evidence of the severity of Wagner's impairments and/or functional effects. 20

C.F.R. § 404.1513(a), (d). Alternatively, a germane reason should be provided for

rejecting any such evidence. *Turner*, 613 F.3d at 1224.

**C. Conclusion**

The ALJ failed to provide specific and legitimate reasons for giving Dr. Belza's

opinion little weight. *Lester*, 81 F.3d at 830. Similarly, the ALJ failed to incorporate any

assessment of Dr. Swift's opinions, other than to indicate the inapposite fact that he

stopped treating her because she was not expected to substantially improve relative to her

work injury. Tr. 27, 1091. Further, it is unclear what weight was afforded the

assessments of Dr. Ha. Therefore, the ALJ committed errors of law in failing to provide

deference to the treating physicians absent specific and legitimate rationales. On remand,

the ALJ should reassess the opinions of the treating, examining, and non-examining

---

[1] The Commissioner's argument that Wagner failed to raise the issue of Ms. Miller's opinion evidence and therefore waived the issue is unavailing. Wagner discussed Ms. Miller's opinion in her Opening Brief as well as in her Reply Brief. Pl.'s Opening Br. 16; Pl.'s Reply Br. 22-23. Moreover, this court must consider the record as a whole. *Robbins*, 466 F.3d at 882.

physicians pursuant to 20 C.F.R. § 404.1527. To the extent the opinions of Wagner's treating doctors are rejected, specific and legitimate reasons must be provided which are based on substantial evidence in the record. *Orn*, 495 F.3d at 633.

## III. RFC and Step Five Conclusions

Based on the ALJ's analysis of Wagner's credibility and his assessment of the medical opinion evidence, the ALJ formulated an RFC. Tr. 24. Based on the RFC, the ALJ then posed questions to the VE during the hearing. Tr. 108-117. The VE's responses indicated Wagner was capable of performing past relevant work as a cashier. Tr. 29. The VE further opined Wagner could perform other occupations such as counter clerk, electronics worker, and routing clerk. Tr. 30. Thus, Wagner was found not disabled. *Id.*

Because the ALJ erred in assessing the credibility of Wagner's testimony, and failed to properly evaluate the medical evidence, the RFC was inappropriately formulated. Accordingly, the VE questions are also rendered erroneous.

## IV. Remand

This court may remand this case for further proceedings or credit certain evidence as true and award benefits. *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). The Ninth Circuit explained the credit-as-true doctrine "requir[es] courts to remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrision v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). Here, even if the evidence were credited as true, the court maintains doubts about whether Wagner is

Page 25 – Opinion & Order

completely disabled.  Further development of the record consistent with this opinion is required in order to determine whether Wagner is able to return to her past relevant work or other work in the economy.  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Accordingly, this case is remanded for further proceedings.

## IV. Conclusion

Based on the foregoing, the Commissioner's decision is REVERSED.  This action is remanded for further proceedings consistent with this Opinion.

IT IS SO ORDERED.

Dated this _____ day of April 2015.

Mark D. Clarke
United States Magistrate Judge